David Halberstadter (SBN 107033)
david.halberstadter@katten.com
Amelia E. Bruckner (SBN 341515)
amelia.bruckner@katten.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: 310.788.4400
Facsimile: 310.788.4471

Attorneys for Defendants
SHOWTIME NETWORKS INC.,
SHOWTIME DIGITAL INC., JOHN
LOGAN and DAVID NEVINS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| ANNA BIANI,<br><br>                    Plaintiff<br><br>        v.<br><br>SHOWTIME NETWORKS, INC., a Delaware corporation; SHOWTIME DIGITAL, INC., a Delaware corporation; JOHN LOGAN, DAVID NEVINS, and DOES 1 and 2, individuals,<br><br>                    Defendants. | Case No. 2:23-cv-03845<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>[Assigned to District Judge Dolly M. Gee and Magistrate Judge Charles F. Eick]<br><br>*[Declaration of Amelia E. Bruckner; Notice of Lodging; and [Proposed] Order filed concurrently herewith]*<br><br>Date:  September 8, 2023<br>Time:  9:30 a.m.<br>Place:  Courtroom 8C |

Katten
KattenMuchinRosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.4445 tel   213.788.7360 fax

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 8, 2023, at 9:30 a.m., or as soon thereafter as the parties may be heard, before the Honorable Dolly M. Gee, United States District Judge, in Courtroom 8C, located at 350 W. First Street, Los Angeles, California 90012, Defendants SHOWTIME NETWORKS INC. ("SNI"), SHOWTIME DIGITAL INC. ("SDI"), JOHN LOGAN and DAVID NEVINS (together, "Defendants") will and hereby do move to dismiss the Complaint ("Complaint") filed by Plaintiff ANNA BIANI ("Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants move to dismiss the Complaint on the grounds that Plaintiff has failed to state any claim upon which relief can be granted. More specifically, judgment should be entered in Defendants' favor on Plaintiff's First Claim for Relief, for direct copyright infringement, because (i) Plaintiff has failed to sufficiently allege that any of the creators or writers of the television series *Penny Dreadful* (the "Series") had access to Plaintiff's works, (ii) the characters that Plaintiff has purported to copyright, and which are the sole basis for her copyright infringement claims, are not entitled to independent copyright protection as a matter of law, and (iii) even if Plaintiff's characters are entitled to independent copyright protection, there is no substantial similarity in protected expression between Plaintiff's characters and characters in the Series as a matter of law.

Judgment should be entered in Defendants' favor on Plaintiff's Third Claim for Relief, for declaratory relief, because this claim is premised on the same allegations of copyright infringement that underlie Plaintiff's First Claim for Relief, and fails for the same reasons. Lastly, judgment should be entered in Defendants' favor on Plaintiff's Fourth Claim for Relief, for an accounting, because it likewise is premised on the same allegations of copyright infringement that underlie Plaintiff's First Claim for Relief, and fails for the same reasons.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 19, 2023.

158426313

1    This Motion is based upon this Notice of Motion and the attached Memorandum

2  of Points and Authorities; the pleadings and papers on file in this action; the Declaration

3  of Amelia E. Bruckner; the works lodged by Defendant concurrently herewith; and such

4  other argument that may be presented to this Court at or before the hearing on this

5  Motion.

6

7                                                Respectfully submitted,

8  Dated:  August 4, 2023              KATTEN MUCHIN ROSENMAN LLP

9

10                                               By: /s/ *David Halberstadter*
                                                      David Halberstadter
11                                               Attorneys for Defendants
                                                 SHOWTIME NETWORKS INC., SHOWTIME
12                                               DIGITAL INC., JOHN LOGAN and DAVID
                                                 NEVINS

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

158426313

3

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................................. 2

II.    ALLEGATIONS OF THE COMPLAINT ............................................. 4

    A.    Plaintiff's Characters .............................................................. 4

        1.    Charlotte Benoit ........................................................... 4

        2.    Frederick Fitzclarence ................................................. 5

        3.    Landon Lloyd ............................................................... 6

    B.    Plaintiff's Other Registered Works ....................................... 6

    C.    The Series And Its Principal Characters ................................ 6

        1.    Vanessa Ives ................................................................ 7

        2.    Sir Malcolm Murray ................................................... 7

    D.    The Allegations Of Defendants' Purported Access To Her Works ........... 8

III.   STANDARDS FOR A MOTION TO DISMISS ................................... 8

IV.    PLAINTIFF FAILS TO STATE A VIABLE CLAIM FOR COPYRIGHT INFRINGEMENT. ................................................. 9

        1.    Access Standards ......................................................... 9

        2.    Plaintiff's Allegations Of Defendants' Purported Access To Her Works Are Pure Speculation ........................... 11

    B.    Plaintiff's Characters Are Not Entitled To Independent Copyright Protection. ..................................................... 12

        1.    Plaintiff's Characters Are Not The "Story Being Told." ............... 12

        2.    Plaintiff's Characters Are Not "Distinctly Delineated." .............. 13

    C.    There Is No Substantial Similarity In Protected Expression Between Plaintiff's Characters And The Two Principal Characters Of The Series. ............................. 15

        1.    Substantial Similarity Standards ................................. 15

            a.    The Ninth Circuit's Extrinsic Test Requires Analysis of the Protected Elements of the Characters. ......... 15

        2.    Stock and Generic Character Elements Are Not Protectable. ....... 16

            i.    Vanessa Ives and Charlotte Benoit ................. 17

            ii.    Vanessa Ives and Frederick Fitzclarence ......... 19

Katten
KattenMuchinRosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0445 tel   213.788.7180 fax

|  | iii. | Vanessa Ives and Landon Lloyd | 20 |
|  | iv. | Sir Malcolm Murray and Landon Lloyd | 20 |
| V. | | PLAINTIFF'S CLAIMS FOR DECLARATORY RELIEF AND AN ACCOUNTING ALSO FAIL. | 21 |
| VI. | | LEAVE TO AMEND SHOULD BE DENIED | 21 |
| VII. | | CONCLUSION | 22 |

158426313

1

## <u>TABLE OF AUTHORITIES</u>

2

3                                                                                          **Page(s)**

4    **Cases**

5    *Anderson v Stallone,*
6      11 USPQ 2d 1161 (C.D. Cal. 1989) ........................................................13, 14

7    *Benay v. Warner Bros. Entm't, Inc.,*
8      607 F.3d 620 (9th Cir. 2010) ................................................................13, 17

9    *Bernal v. Paradigm Talent & Literary Agency,*
       788 F. Supp. 2d 1043 (C.D. Cal. 2010) ......................................................11
10

11   *Briggs v. Blomkamp,*
       70 F. Supp. 3d 1155 (N.D. Cal 2014) .........................................................12
12

13   *Burroughs v. Metro-Goldwyn-Mayer, Inc.,*
       519 F.Supp. 388 (S.D.N.Y.1981) ...............................................................14
14

15   *Campbell v. Walt Disney Co.,*
       718 F. Supp. 2d 1108 (N.D. Cal. 2010) ....................................................9, 17
16

17   *Cavalier v. Random House, Inc.,*
       297 F.3d 815 (9th Cir. 2002) .............................................................10, 16, 18
18

19   *Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.,*
       697 F. Supp. 1136 (E.D. Cal. 1987) ...........................................................16
20

21   *Daniels v. Walt Disney Co.,*
       958 F. 3d 767 (9th Cir. 2020) ...................................................................14
22   *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.,*
       499 U.S. 340 (1991) .................................................................................9
23

24   *Filmvideo Releasing Corp. v. Hastings,*
       509 F. Supp. 60 (S.D.N.Y. 1981) ...............................................................14
25

26   *Funky Films, Inc. v. Time Warner Entm't Co., L.P.,*
       462 F.3d 1072 (9th Cir. 2006) ...............................................................10, 16
27

28   *Gable v. Nat'l Broad. Co.,*
       727 F. Supp. 2d 815 (C.D. Cal. 2010), *aff'd sub nom. Gable v. Nat'l
       Broad. Co.,* 438 F. App'x 587 (9th Cir. 2011) .............................11, 12, 18, 21

iii

158426313

*Gilbert v. New Line Prods., Inc.*,
    No. 09-02231, 2009 WL 7422458 (C.D. Cal. Nov. 16, 2009), *aff'd*, 490
    F. App'x 34 (9th Cir. 2012) ...................................................................................23

*Griffin v. Peele*,
    2017 WL 8231241 (C.D. Cal. 2017) ................................................................10

*Kouf v. Walt Disney Pictures & Television*,
    16 F.3d 1042 (9th Cir. 1994) ..............................................................................17

*Loomis v. Cornish*,
    2013 WL 6044349 (C.D. Cal 2013), *aff'd* 836 F.3d 991 (9th Cir. 2016) ..........11

*Marcus v. ABC Signature Studios, Inc.*,
    279 F. Supp. 3d, 1056 (C.D. Cal 2017) ............................................................22

*McCormick v. Sony Pictures Ent.*,
    2009 WL 10672263 (C.D. Cal 2009) ...........................................................14, 15

*Meta-Film Assocs., Inc. v. MCA, Inc.*,
    586 F. Supp. 1346 (C.D. Cal. 1984) ...........................................................10, 12

*Metro-Goldwyn-Mayer v. American Honda*,
    900 F. Supp. 1287 (C.D. Cal. 1995) ...........................................................13, 14

*Musero, III v. Mosaic Media Grp. Inc.*,
    2010 WL 11595453 (C.D. Cal. Aug. 9, 2010) .....................................................9

*Newt v. Twentieth Century Fox Film Corp.*,
    2016 WL 4059691 (C.D. Cal. July 27, 2016) ......................................................9

*Olson v. National Broadcasting Co.*,
    855 F.2d 1446 (9th Cir. 1988) ............................................................................17

*Panton v. Strong*,
    No. 17-00050, 2018 WL 5099666 (C.D. Cal. Mar. 14, 2018) ...........................11

*Rentmeesterv Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018) .......................................12

*Rice v. Fox Broadcasting Co.*,
    330 F.3d 1170 (9th Cir. 2003) .......................................................................13, 16

*Schkeiban v. Cameron*,
    2012 WL 12895722 (C.D. Cal 2012) ................................................................10

Katten
KattenMuchinRosenmanLLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.6445 tel   213.788.7360 fax

iv

*Schkeiban v. Cameron*,
No. 12-0636, 2012 WL 5636281 (C.D. Cal. Oct. 4, 2012) *aff'd* 566 F.
App'x 616 (9th Cir. 2014) ...................................................................22

*Scott v. Meyer*,
2009 WL 10673163 (C.D. Cal. Dec. 2, 2009).......................................9

*Shaw v. Lindheim*,
919 F.2d 1353 (9th Cir. 1990) ......................................................13, 17

*Shwarz v. United States*,
234 F.3d 428 (9th Cir. 2000) ...............................................................16

*Silas v. Home Box Office*,
201 F. Supp. 3d 1158 (C.D. Cal. 2016).............................................3, 17

*Three Boys Music Corp. v. Bolton*,
212 F.3d 477 (9th Cir. 2000) ........................................................10, 12

*Walt Disney Prods., v. Air Pirates*,
581 F.2d 751 (9th Cir. 1978) ...............................................................13

*Warner Bros. Pictures, Inc. v. Columbia Broadcasting System*,
216 F.2d 945 (9th Cir. 1954) ......................................................3, 13, 17

*Wild v. NBC Universal, Inc.*,
788 F. Supp. 2d 1083 (C.D. Cal. 2011), *aff'd sub nom. Wild v. NBC
Universal*, 513 F. App'x 640 (9th Cir. 2013) .......................................9

*Zella v. E.W. Scripps Co.*,
529 F. Supp. 2d 1124 (C.D. Cal. 2007).........................................16, 17

**Statutes**

17 U.S.C § 201 .............................................................................................13

17 U.S.C. § 505 ...............................................................................................4

Katten
KattenMuchinRosenman LLP

515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0445 tel   213.788.7360 fax

158426313

Katten
Katten Muchin Rosenman LLP

515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0445 tel   213.788.7260 fax

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff Anna Biani ("Plaintiff") alleges that Defendants Showtime Networks Inc. ("SNI"), Showtime Digital Inc. ("SDI"), John Logan and David Nevins (together, "Defendants") infringed upon three characters incorporated into her registered works, which she submitted to a members-only, online role-playing forum entitled "Murder & Roses: Victorian London Crime and Scandals" ("Murder & Roses").   The three characters, named Charlotte Benoit ("Charlotte"), Frederick FitzClarence ("Frederick"), and Landon Lloyd ("Landon"), are the subjects of three of Plaintiff's copyright registrations.[1]  Plaintiff's remaining seven copyright registrations comprise compilations of story submissions that Plaintiff contributed to the Murder & Roses forum, and are alleged to have been infringed only because these compilations tell stories about Plaintiff's three characters.

Plaintiff fails to state any claim for copyright infringement for three reasons.  First, Plaintiff does not allege any reasonable probability that any of the Defendants, or anyone associated with the creation, development or distribution of the Series, ever had legally cognizable access to Plaintiff's works.  Rather, Plaintiff speculates that two unidentified "moderators" of the forum, who go by the pseudonyms "Dorian Gray" and "Lord Charles Carmichael" and who approved Plaintiff's online submissions, *must have* provided access to Plaintiff's characters to Defendants or other persons acting as Defendants' agents; either that, or Defendants *must have* accessed her characters directly through the Murder & Roses forum.   Neither hypothetical theory is legally sufficient to satisfy Plaintiff's pleading requirement for access.

Second, for characters – and particularly, literary characters – to be independently capable of copyright protection, they must be either "distinctly delineated" or constitute

---

[1]     The character of Charlotte is covered by Registration No. TX 9-259-135 (Compl. Ex. A); the character of Frederick is covered by Registration No. TX 9-259-146 (*Id.* at Ex. B; and the character of Landon is covered by Registration No. TX 9-259-151 (*Id.* at Ex. C).

the very "story being told."  The Complaint makes conclusory allegations concerning these requirements.  But the characters themselves as embodied in the "deposit copies" underlying Plaintiff's registrations control over her allegations, and they tell a different story.  Plaintiff's characters are virtually indistinguishable from many other literary characters set in the Victorian era in London, England, and the "stories" into which they have been placed; their physical and conceptual qualities have been insufficiently defined so as to be readily identified if portrayed in other works; and they are little more than "chessm[e]n in the game of telling the story." *Warner Bros. Pictures, Inc. v. Columbia Broadcasting System*, 216 F.2d 945, 950 (9th Cir. 1954).

Third, even if Plaintiff's three characters were entitled to independent copyright protection, there is no substantial similarity in protected expression between any of those characters and the two principal characters in the Series, Vanessa Ives ("Vanessa") and Sir Malcolm Murray ("Sir Malcolm").  Plaintiff engages in impermissible slice-and-dicing of personality attributes between Vanessa and *three of her own characters* to cobble together a claim for substantial similarity, but courts have made clear that where characters "have noticeable differences," the fact that they share some similarities does not establish substantial similarity. *Silas v. Home Box Office*, 201 F. Supp. 3d 1158, 1177 (C.D. Cal. 2016).  Additionally, the purported similarities Plaintiff identifies between Vanessa and Malcolm and her characters are either unprotectable generic qualities flowing from the Victorian settings in both Murders & Roses and *Penny Dreadful* or stated at such a high-level of generality that it obscures that character's actual attribute.

By her Third Claim for Relief, Plaintiff seeks a declaratory judgment "that she is the creator and owner of her original characters, and that these characters served as the direct inspiration and basis for central characters" in the Series.  Her claim is both entirely dependent upon and duplicative of her copyright infringement claim.  If the copyright infringement claim is dismissed, her declaratory relief claim also must be dismissed.

Katten
KattenMuchinRosenman

155 South Flower Street, Suite 1000
Los Angeles, CA 90071-2329
213.788.8463 tel   213.788.7360 fax

Moreover, the Third Claim for Relief should be dismissed even if Plaintiff's copyright infringement claim were to survive because it is redundant.

Plaintiff's Fourth Claim for Relief seeks an accounting of the profits that SNI and SDI have derived from the Series. This claim, too, depends on the viability of Plaintiff's copyright infringement claim, so if the copyright infringement claim is dismissed, Plaintiff's accounting claim also must be dismissed.

For these reasons, explained in greater detail below, Defendants respectfully request that the Court: (1) dismiss with prejudice Plaintiff's First, Third and Fourth Claims for Relief;[2] and (2) award Defendants their attorneys' fees and costs pursuant to 17 U.S.C. section 505.

## II.    ALLEGATIONS OF THE COMPLAINT

Plaintiff claims that the creators of SNI's *Penny Dreadful*, a television series that aired from 2014 to 2016, *somehow* accessed her Charlotte, Frederick and Landon characters, which Plaintiff created for the Murder & Roses role-playing forum, and used those characters to create two of the main characters of *Penny Dreadful*, Vanessa and Sir Malcolm ("Sir Malcolm").

### A.    Plaintiff's Characters

Plaintiff created Charlotte, Frederick and Landon to participate in Murders & Roses. As evidenced by the forum's title, Murders & Roses focused on stories relating to crime in Victorian-era London. To join, members either chose from a pre-selected list of genre-appropriate canonical characters (*e.g.*, Victor Frankenstein) or created their own character to participate in the storylines developed by moderators and other users. (Compl. ¶9.)

#### 1.    Charlotte Benoit

Charlotte is a "violent and mysterious woman" who dresses in a dark jacket, high-collared shirt and veiled top-hat. (Compl. ¶11; Declaration of Amelia Bruckner

---

[2]    Plaintiff's Second Claim for Relief is asserted only against the "Doe" defendants.

158426313

Katten

Katten Muchin Rosenman LLP

515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0445 tel   213.788.7360 fax

("Bruckner Decl.") ¶ 6, Ex. D.)  Occasionally, Charlotte also dresses like a man.  (Compl. ¶11.)  Charlotte is a "mentally disturbed child" as reflected in her "compulsive obsession [with] fairy tales with dark scenarios."  (*Id.*)  After being abandoned by her parents, Charlotte was raised by her doting grandmother as part of the middle classes of England and America.  (Bruckner Decl. ¶4 Ex. A.)  As a girl, Charlotte was "[i]nfatuated by the idea of witchery."  (*Id.*)  Charlotte ultimately assumed the identity of a witch-doctor known around England as having "magical healing abilities."  (*Id.*)  But Charlotte has no actual supernatural abilities, just a thorough understanding of herbal supplements.  (*Id.* ¶6, Ex. D.)

Charlotte is driven by unequal treatment of women.  (*Id.*¶4, Ex. A.)  She spent much of her life attending "every feminist revolt that took place in both England and France."  (*Id.*)  She is homicidal and believes the world "needs to be cleansed from rudimentary-minded human beings."  (*Id.*¶6, Ex. D.)  Charlotte kills by using hallucinogenic herbs that "drive victims to psychosis."  (*Id.*)  Charlotte is also "sexually aggressive and corrupting," a characteristic which she effectuates through her interest in "newly matured boys and girls of late teens."  (*Id.*; Compl. ¶ 41.)

## 2.  Frederick Fitzclarence

Frederick is a man of aristocratic birth.  (Bruckner Decl. ¶ 4, Ex. B.)  His work is that of an "imposter": Frederick pretends to be any convenient profession.  (*Id.*)  To suit this "work," Frederick's attire varies drastically from "formal, fancy suits to worn-out dirty rags".  (*Id.*)

As a child, a priest diagnosed Frederick as being possessed by demons, due to his epilepsy.  (*Id.*)  After Frederick slept with a nanny as a teen, his family banished him to a seminary, where he was subject to exorcising attempts.  (*Id.*)  Frederick was rescued by his military uncle, who nurtured his talent for marksmanship.  (*Id.*)  Though Frederick's military ambitions were encouraged by his uncle, he was barred from enlisting due to his epilepsy.  (*Id.*)

Katten
KattenMuchinRosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0445 tel   213.788.7360 fax

158426313

Hopes for a military career dashed, Frederick became obsessed with pretending to be someone else: he is driven by getting attention. (*Id.*)  Frederick is oppressed by dark thoughts and is at the whim of his impulses. (*Id.*)

3.    Landon Lloyd

Landon is an American, 29 year-old man with clairvoyant abilities sparked by a childhood near-death experience. (*Id*. ¶4, Ex. C.)  He is described as living "a nomadic lifestyle, constantly traveling from one country to another" primarily to find other clairvoyants. (*Id.*)  He stopped his travels to settle in London as a private investigator, hoping to find his missing half-sister. (*Id.*)  Landon is "lucky by nature," loyal, high-spirited, and optimistic, and yet "clumsy and shy when it comes to relationships." (*Id.*)  Landon is driven by knowledge, but is also a dare-devil, frequently indulging in "spontaneous bold decisions." (*Id.*)

**B.    Plaintiff's Other Registered Works**

The other copyright registrations are compendiums of posts that Plaintiff made in the Murders & Roses forum from January 2011 to July 2012. (*See* Bruckner Decl. ¶6, Exs. D-I.)  The forum is a platform for roleplaying as canonical or original characters; Plaintiff's posts are first-person narratives *as* Landon, Charlotte, and Frederick.  For example, Plaintiff's posts from January to March 2011 deal primarily with Charlotte's burgeoning romance with Victor Frankenstein. (*Id.* ¶6, Ex. D.)  In the compilation of posts from July to September of 2011, Plaintiff explores a relationship between Frederick and a woman named Josephine. (*Id.*, Ex. E.)  One of Landon's storylines is meeting a female florist as a result of his monkey getting lost in a public park. (*Id.*, Ex. F.)  The storylines throughout the compendium mirror these relationship-driven plots.

**C.    The Series And Its Principal Characters**

*Penny Dreadful* ran for three seasons from 2014 to 2016. (Bruckner Decl. at ¶7.) The show was created by Defendant John Logan ("Logan"), screenwriter of multiple feature films. (*Id.*)  Defendant David Nevins ("Nevins") assisted as an executive at Showtime. (*Id.*)  The show takes place in England in 1891 and centers on two main

6

1   characters: Vanessa and Sir Malcolm.  Sir Malcolm enlists Vanessa (childhood friend of
2   Sir Malcolm's daughter) to assist in rescuing his daughter from supernatural beings.

3               1.    <u>Vanessa Ives</u>

4         Vanessa is a quiet, intelligent, and cunning woman born to a family of immense
5   wealth.  Her family lived next to Sir Malcolm's; as a result, she was close with Sir
6   Malcolm's daughter, Mina.  As a child, Vanessa happened upon her mother and Sir
7   Malcolm sleeping together after one of Sir Malcolm's trips to Africa, both committing
8   adultery.  This experience ripped her of her innocence: she began resenting Mina and
9   acting out.  The resentment she felt for Mina ratcheted when, years later, a man asked
10  Mina to marry him.  As retribution for Sir Malcolm's impact on her loss of innocence
11  and for jealousy over Mina's good fortune, Vanessa slept with Mina's bridegroom on the
12  eve of the wedding.

13        This event fractured the bond between the two families and sent Vanessa into a
14  dark spiral, causing her to be institutionalized.  Not long after, Vanessa had a vision of
15  Mina, who begged Vanessa to save her.  This vision encouraged Vanessa to seek out a
16  witch to understand and harness her own supernatural abilities to find Mina.

17        Vanessa is represented as fundamentally good but acutely aware of her capacity to
18  harm others.  She is not homicidal and only becomes violent when possessed by demons.
19  She has a sensuality that manifests multiple times throughout the first season, but her
20  sexual encounters are never depicted as arising from perversion.  Vanessa's struggle is
21  with God and faith.  (*See generally id.* ¶6, Ex. J.)

22               2.    <u>Sir Malcolm Murray</u>

23        Sir Malcolm is a 60-year old British explorer of the (then) uncharted territories of
24  Africa.  He is ruggedly handsome with salt-and-pepper hair and dresses in expensive
25  three-piece suits.  Sir Malcolm and Vanessa join together to find Sir Malcolm's daughter,
26  Mina, who has been captured by an evil, supernatural force.  Sir Malcolm is hardened,
27  private, and marked by trauma.

28

**Katten**
KattenMuchinRosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.4425 tel   213.788.7360 fax

Sir Malcolm is invested masculinity; he is shown rejecting his effete son because of perceived weakness.  Sir Malcolm attempts to prevent his son from joining him on his trips to Africa, but relents when his son hits early adulthood.  During that trip, his son contracts malaria and dies, a fact which haunts Sir Malcolm.

After Vanessa and Sir Malcolm come together to find Mina, Sir Malcolm is revealed to be arrogant and cold: he guiltlessly beats and chains a young man possessed by demons.  He also passes over Victor Frankenstein for an American sharp-shooter to travel with him to Africa because of Victor's similarities to Malcolm's dead son.  But Sir Malcolm contains multitudes: when Vanessa's life is threatened by Mina (who has been turned into a vampire), Sir Malcolm chooses to kill Mina rather than lose Vanessa, declaring Vanessa his true kin.  (*See id.* ¶6, Ex. J.)

### D.    The Allegations Of Defendants' Purported Access To Her Works

Plaintiff pleads access on information and belief.  She alleges that the moderators of the Murders & Roses forum who approved her characters for inclusion in the forum in some way aided in passing along these characters in a chain of access.  (Compl. at ¶ 58.)  Plaintiff also speculates that "Showtime, Logan, and Nevins, or persons acting as their agents and/or at their direction or under their control, including through Does 1 and 2, had access to [Plaintiff's] works on Murders & Roses."  This allegation is unsubstantiated; Plaintiff does not allege any *facts* that would connect any person involved with *Penny Dreadful* to the obscure roleplaying forum.

## III.    STANDARDS FOR A MOTION TO DISMISS

A motion to dismiss must be granted unless the plaintiff alleges "more than the mere possibility of misconduct;" otherwise, "the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief."  *Wild v. NBC Universal, Inc.*, 788 F. Supp. 2d 1083, 1097 (C.D. Cal. 2011), *aff'd sub nom. Wild v. NBC Universal*, 513 F. App'x 640 (9th Cir. 2013).  Although a plaintiff's allegations are generally taken as true, "labels and conclusions" are insufficient to defeat a motion to dismiss.  *Newt v. Twentieth Century Fox Film Corp.*, 2016 WL 4059691, at *1 (C.D. Cal. July 27, 2016).  "[W]hen

Katten
KattenMuchinRosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.4445 tel   213.788.7360 fax

the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1111 (N.D. Cal. 2010).[3]

## IV.   PLAINTIFF FAILS TO STATE A VIABLE CLAIM FOR COPYRIGHT INFRINGEMENT.

To prevail on a claim for copyright infringement, a plaintiff must show: (i) ownership of a valid copyright; and (ii) that the defendant copied original elements of that work. *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*, 499 U.S. 340, 361 (1991); *see also Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006). The second prong of this analysis requires that the plaintiff establish that "the infringer had access to [his or her] copyrighted work and that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).

### A.   Plaintiff Fails To Allege Plausible Facts That Defendants Had Access To Her Works.

#### 1.   Access Standards

To demonstrate "access," a plaintiff must sufficiently allege that the purported infringer had a "reasonable opportunity," not simply a "bare possibility," of seeing the plaintiff's work prior to the creation of the allegedly infringing work. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000). Access "may not be inferred through mere speculation or conjecture." *Id.*; *Schkeiban v. Cameron*, 2012 WL 12895722, at *1-2 (C.D. Cal 2012) (granting motion to dismiss where "[p]laintiff [] pled no facts indicating that it was reasonably possible that defendants had access to the work but rather merely speculate[d] that it occurred without foundation").[4] To survive a motion to

---

[3]     *See also Musero, III v. Mosaic Media Grp. Inc.*, 2010 WL 11595453, at *2-6 (C.D. Cal. Aug. 9, 2010) (dismissing complaint and comparing plaintiff's screenplay with the movie *Bruno*); *Scott v. Meyer*, 2009 WL 10673163, at *2-6 (C.D. Cal. Dec. 2, 2009) (dismissing complaint and comparing plaintiff's novel with *Twilight* saga novel).

[4]     In *Schkeiban*, the plaintiff alleged that he sent his script to several entities in the film industry, implyinng that one of those entities passed the script along to the

dismiss, the plaintiff must allege either: "(i) a particular chain of events . . . between the plaintiff's work and the defendant's access to that work . . . or (ii) that the plaintiff's work has been widely disseminated." *Three Boys Music*, 212 F.3d at 482.

Moreover, if a plaintiff claims that a defendant obtained access to his or her work via a third party, the plaintiff must allege a *sufficient nexus* between "the individual who possesses knowledge of a plaintiff's work and the creator of the allegedly infringing work." *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1356-59, 1364 (C.D. Cal. 1984) (even though plaintiff showed his work to a director who was under contract with the defendant studio and worked on the studio lot, he could not demonstrate any connection between that director and the studio's allegedly infringing project); *Griffin v. Peele*, 2017 WL 8231241, at *6 (C.D. Cal. 2017) (no evidence of access where plaintiff's allegations of a chain of events were "unverifiable" and nothing "more than a bare possibility").

To allege the requisite sufficient nexus, the plaintiff must allege that he/she submitted his/her work to an intermediary who either "*(1) has supervisory responsibility for the allegedly infringing project, (2) contributed ideas and materials to it, or (3) worked in the same unit as the creators.*" *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 815, 826 (C.D. Cal. 2010), *aff'd Gable v. Nat'l Broad. Co.*, 438 F. App'x 587 (9th Cir. 2011) (emphasis added); *see also Panton v. Strong*, No. 17-00050, 2018 WL 5099666, at *3 (C.D. Cal. Mar. 14, 2018) (even if the intermediary sent plaintiff's work to the director of one episode of the infringing series, plaintiff could not allege that the director gave plaintiff's work to the creators of the infringing series a decade later); *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1057-58 (C.D. Cal. 2010) (no reasonable possibility of access where the plaintiff's script was sent to agent who worked at the same agency as the agent of the infringing show's creator); *Loomis v. Cornish*, 2013 WL 6044349, at *2-4 (C.D. Cal 2013), *aff'd* 836 F.3d 991 (9th Cir. 2016)

---

defendants. The Court held that such allegations were pure speculation. 2012 WL 12895722, at *1.

158426313

Katten
KattenMuchinRosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.6445 tel   213.788.7360 fax

(insufficient evidence of access where alleged intermediary had no involvement with the infringing work).

2. Plaintiff's Allegations Of Defendants' Purported Access To Her Works Are Pure Speculation.

As mentioned in Part IID, Plaintiff does not allege that her works were widely-disseminated, nor could she. Her own Complaint evidences that the only place where her character descriptions were available was the Murder & Roses forum, a members-only online community. (Compl. ¶ 9.) To join the forum, users were required to submit an application that was subject to approval by the forum moderators. (*Id.* ¶ 34.)

What Plaintiff does allege is pure speculation, insufficient as a matter of law to satisfy any of the requirements discussed above. In an anemic attempt to allege Defendants' direct access to her works, Plaintiff asserts, upon information and belief, that "Showtime, Logan, and Nevins, or persons acting as their agents and/or at their direction or under their control . . . had access to Biani's works on Murders & Roses." This allegation is insufficient even to establish a legally-inadequate "bare possibility" of access, much less meet the required "reasonable opportunity" standard. *Three Boys Music*, 212 F.3d at 482 (9th Cir. 2000).

Plaintiff also speculates that Defendants somehow obtained access to her works from the anonymous moderators of the Murder & Roses forum. (Compl. ¶¶ 58, 59.) But to satisfy the pleading requirements necessary to establish access through an intermediary, Plaintiff was required to plausibly allege a sufficient nexus between the forum moderators and Defendants, as discussed above. *Gable*, 727 F. Supp. 2d at 826. Plaintiff alleges none of this, and she cannot, because she has no plausible basis for the existence of *any* connection whatsoever between the moderators of the Murder & Roses forum and Defendants. *See Meta-Film*, 586 F. Supp. at 1356-59.

Plaintiff can only speculate that the Defendants *must have* obtained access to her works either directly through the online forum itself or through the forum's moderators, because Plaintiff apparently cannot fathom any other way that Defendants could have

158426313

created their Series characters. But her allegations of access fail as a matter of law, and therefore her copyright infringement claim should be dismissed.[5]

**B.     Plaintiff's Characters Are Not Entitled To Independent Copyright Protection.**

Characters are not mentioned in the Copyright Act as a separate class entitled to protection. As such, the Ninth Circuit requires that plaintiffs satisfy one of two demanding tests to grant protection to a character: either the character must constitute the "story being told" or be "distinctly delineated." 17 U.S.C § 201; *see Rice v. Fox Broadcasting Co*., 330 F.3d 1170, 1175 (9th Cir. 2003). Plaintiff cannot satisfy either test.

1.     Plaintiff's Characters Are Not The "Story Being Told."

No character is protectable under copyright law unless "the character really constitutes the story being told." *Warner Bros. Pictures, Inc. v. Columbia Broadcasting Sys., Inc.*, 216 F.2d 945, 950 (9th Cir. 1954). Where a character is merely a "chessman in the game of telling the story" or a "*vehicle* for the story being told," the character is not copyrightable. *Id*. (emphasis added).[6]

By virtue of being part of a role-playing forum, the story in which Plaintiff's characters appear is necessarily crowdsourced. No single character can be the "story being told" when each character effectuates plot points in conjunction with other players

---

[5]     Plaintiff also throws in an allegation that "[a]dditional evidence of access includes the substantial and/or striking similarities between Biani's character Landon Lloyd . . . and the Penny Dreadful character Sir Malcolm Murray." (Compl. ¶ 63.) To establish "striking similarity," the similarities between two works must be "so great" that it is "highly unlikely" that they were created independently. *Rentmeesterv Nike, Inc.*, 883 F.3d 1111, 1124 (9th Cir. 2018); *see also Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1167 (N.D. Cal 2014) ("striking similarity" "simply means that, in human experience, it is virtually impossible that the two works could have been independently created") For the reasons explained below, Plaintiff's characters are not even "substantially" similar in protected expression to the principal characters in the Series, much less "strikingly" similar.

[6]     Characters that have been found to be the "story being told" include Mickey Mouse, and James Bond. *Walt Disney Prods., v. Air Pirates*, 581 F.2d 751 (9th Cir. 1978)*; Metro-Goldwyn-Mayer v. American Honda*, 900 F. Supp. 1287 (C.D. Cal. 1995). Characters that have been found not to be the "story being told" include Sam Spade and "The Equalizer." *Warner Bros. Pictures, Inc. v. Columbia Broadcasting Sys., Inc.*, 216 F.2d 945 (9th Cir. 1954); *Shaw v. Lindheim*, 919 F.2d 1353, 1358 (9th Cir. 1990).

Katten
Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.4425 tel   213.788.7780 fax

in the forum.  (*See* Compl. ¶ 44) (forum moderator expressing that he is curious to see Plaintiff's character Benoit incorporated as "part of the forum plot"); (*see also* Bruckner Decl. ¶ 6, Ex. D) (Plaintiff requesting others "plot with [Charlotte]".)  Additionally, the forum's chosen setting and genre of late-Victorian era true crime, in addition to the presence of Victorian Gothic canonical characters and their already-established histories, fixed a foundation upon which Plaintiff's characters were built.  Those fundamental story elements gave rise to Plaintiff's characters, not the other way around.

Moreover, there is no cognizable, complete "work" in this case.  Aside from the registrations for her three characters, Plaintiff's copyrights are in several compilations of her own story contributions to the forum.  As the story is not itself exclusively authored by Plaintiff and her posts are puzzle pieces in a total plot formed by numerous Murders & Roses community members, her characters fail to constitute the "story being told."

### 2.    Plaintiff's Characters Are Not "Distinctly Delineated."

A character is "distinctly delineated" and therefore entitled to copyright protection if it: (1) is recognizable as the same character whenever it appears and displays consistent, identifiable character traits and attributes; and (2) is especially distinctive and contains some unique elements of expression.  *Daniels v. Walt Disney Co.*, 958 F. 3d 767, 771 (9th Cir. 2020).[7]

The first step of the test requires the Court to consider whether a character is "recognizable as the same character *whenever it appears*" and emphasizes the consistency of character traits *across works.  Daniels*, 958 F.3d at 771.  Absent multiple works, measuring consistency and recognition is a futile exercise.  *See e.g., id.; Metro-Goldwyn-Mayer v. American Honda*, 900 F. Supp. 1287 (C.D. Cal. 1995).  Since there are no cognizable or completed works to evaluate in this case, Plaintiff's characters

---

[7]    Characters that have been found to be the "distinctly delineated" include Rocky and Tarzan.  *Anderson v Stallone*, 11 USPQ 2d 1161 (C.D. Cal. 1989); *Burroughs v. Metro-Goldwyn-Mayer, Inc.*, 519 F.Supp. 388, 391 (S.D.N.Y.1981).  Characters that have been found *not* to be the "distinctly delineated" include characters from Cargo and World of Warcraft computer game characters.  *Olson v. National Broadcasting Co.*, 855 F.2d 1446, 1451–1452 (9th Cir. 1988); *Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1173–74 (N.D. Cal. 2015).

13

Katten
KattenMuchinRosenmanLLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.2445 tel   213.788.7380 fax

simply cannot meet the first part of the test.  Given that, it is not necessary that Defendants address whether or not Plaintiff's characters are especially distinctive.

Nevertheless, Plaintiff can neither establish that her characters are especially distinctive or contain unique elements of expression.  *See Daniels,* 958 F.3d at 771.  Stock characters that fit "general, stereotypical categories" are not especially distinctive.  *McCormick v. Sony Pictures Ent.*, 2009 WL 10672263, at *14 (C.D. Cal 2009).  The majority of the character attributes that Plaintiff identifies are generic and flow from the setting of late-Victorian era England, the "true-crime" designated plot-lines, and the backdrop of canonical characters from Victorian literature.  For example, Plaintiff's characters are costumed in clothes from the era: Charlotte wears "a dark jacket and matching skirt, with a high-collared shirt and veiled top-hat, and… don[s] extravagant gowns with low-cut décolletages for special evenings." (Compl. at ¶11.)  Landon wears "brown pinstripe sack coat and pinstripe pants, white dress shirt, tawny vest, coffee-colored leather shoes and bowler hat, black tie and gold pocket watch." (*Id.* at ¶49.)  These costumes are wholly characteristic of Victorian dressing and are therefore unprotectable.

Further, Plaintiff's characters have gothic, macabre interests rooted in the criminal or supernatural behavior of the canonically-derived characters that drive the Murders & Roses forum.  Frederick, for example, is afflicted with epilepsy, which, as dictated by the limited scientific understanding of the time, is attributed to demonic possession. (Compl. ¶ 45.)  Landon's clairvoyance similarly draws a direct relationship to his surroundings, as it aids in his capacity to work as a private investigator (much like Sherlock Holmes) and echoes the supernatural storytelling elements of characters like Dorian Gray and Frankenstein's monster. (*Id.* ¶ 49.)  Charlotte's homicidal impulses likewise fit alongside Jack the Ripper and Sweeney Todd. (*See id.* ¶ 32.)  Ninth Circuit law dictates that these generic attributes cannot form a copyright protectable character. *See McCormick,* 2009 WL 10672263 at *14.

14

158426313

Finally, even the events that establish these characters' attributes arise out of the relevant time period.  Charlotte's masculine personality and occasional manner of dress arise in reaction to the Victorian-era social constraints on women.   Frederick's confinement to a seminary resulting from his epileptic seizures is dictated by the limited scientific understanding of the time and more common willingness to send family members away.  Landon's exploration of continents in the global south are in keeping with the rampant colonialism of Victorian England.

These characters are neither especially distinctive nor unique because their traits flow from setting and plot: story elements not conceived of by Plaintiff, but by anonymous Murders & Roses forum moderators.  Absent distinctive qualities, Plaintiff's characters are not independently copyrightable.  Plaintiff's claim thus fails, because copyright was erroneously granted to her characters.

**C.** **There Is No Substantial Similarity In Protected Expression Between Plaintiff's Characters And The Two Principal Characters Of The Series.**

1. Substantial Similarity Standards

Courts routinely dismiss copyright infringement claims at the pleading stage where no substantial similarity exists.  *See*, *e.g.*, *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1139 (C.D. Cal. 2007).   Since the works themselves are determinative of substantial similarity, not the allegations of the complaint, courts compare the works in dispute and assess whether they are substantially similar in protectable expression.  *See, e.g., Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000); *Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*, 697 F. Supp. 1136, 1138 (E.D. Cal. 1987) (in copyright infringement cases "the works themselves supersede and control any contrary allegations, conclusions or descriptions of the works").

i. The Ninth Circuit's Extrinsic Test Requires Analysis of the Protected Elements of the Characters.

Katten
KattenMuchinRosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.4545 tel   213.788.7360 fax

The Ninth Circuit employs a two-part test that combines an extrinsic and intrinsic analysis[8] to determine substantial similarity; the plaintiff must satisfy both tests to prevail on a copyright infringement claim. *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003). A failure to satisfy the extrinsic component on a motion to dismiss requires judgment for the defendant as a matter of law. *See Funky Films,* 462 F.3d at 1077. The extrinsic test "focuses on 'articulable similarities' between the characters in both works. *Funky Films*, 462 F.3d at 1077. Notably, the Court must look only at whether the "*protectable elements, standing alone*, are substantially similar." *Id.* A motion to dismiss should be granted if, after comparing the characters, a court concludes that "no reasonable jury could find that the [characters] are substantially similar, or if it concludes that the similarities pertain only to unprotected elements." *Zella*, 529 F. Supp. 2d at 1131.

2.    <u>Stock and Generic Character Elements Are Not Protectable.</u>

As discussed in Part B above, generalized character types are not protected by copyright law. *Kouf v. Walt Disney Pictures & Television,* 16 F.3d 1042, 1046 (9th Cir. 1994). Only characters that are "especially distinctive," like Mickey Mouse and Superman, receive protection. *Olson v. National Broadcasting Co.*, 855 F.2d 1446, 1452 (9th Cir. 1988). By contrast, most literary characters are little more than "chessmen in the game of telling the story," and are not afforded copyright protection. *Warner Bros. Pictures, Inc. v. Columbia Broad. Sys., Inc.*, 216 F.2d 945, 949-50 (9th Cir. 1954). Moreover, "characters which naturally flow from a 'basic plot idea' are 'scenes-a-faire'" and not protectable. *Campbell*, 718 F. Supp. 2d at 1115.

In general, courts require a very high degree of similarity between characters in order for them to be considered substantially similar. *See Shaw*, 919 F.2d at 1358 (no substantial similarity between characters who were both well educated, wealthy, had expensive tastes, and fought against injustice); *Benay*, 607 F.3d at 626-27 (no substantial

Katten
KattenMuchinRosenman LLP

515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.7400 tel   213.788.7560 fax

---

[8] On a motion to dismiss, "only the extrinsic test matters for comparison of literary works." *Cavalier v. Random House*, 297 F.3d 815, 824 (9th Cir. 2002). Conversely, "the intrinsic test's subjective inquiry must be left to the jury." *Id.*

16

similarity between characters who differed in their marital status, job, dreams/nightmares, and ideology).

In pleading substantial similarity, Plaintiff engages in impermissible "slice-and-dicing," by arguing Defendants took elements from *each of Plaintiff's three characters* to create Vanessa, and characteristics of *two of Plaintiff's characters* to create Sir Malcolm. However, if characters "have noticeable differences," that they share some similarities does not establish substantial similarity. *Silas v. Home Box Office*, 201 F. Supp. 3d 1158, 1177 (C.D. Cal. 2016). Thus, Plaintiff's claim fails at the outset: that Plaintiff's characters may share isolated (and largely unprotectable) similarities with Vanessa or Sir Malcolm does not overcome that those characters have significant *differences* from Vanessa and Sir Malcolm. Neither Vanessa nor Sir Malcolm can be substantially similar to *multiple* characters created by Plaintiff. Thus, Plaintiff cannot establish substantial similarity between her characters and those in *Penny Dreadful*.

### i.   Vanessa Ives and Charlotte Benoit

Plaintiff alleges that her character Charlotte is substantially similar to *Penny Dreadful* character Vanessa because both characters: (i) are young, pale, slender women with brunette hair; (ii) rebel against the social expectations put on women in the Victorian age; (iii) use their powers of seduction to get what they want; (iv) wear clothes typical of the 1880s; and (v) are witches. (Compl. ¶57.) These alleged similarities are not protectable under copyright law and are overgeneralizations of two vastly different characters.

All five of these characteristics are unprotectable, high-level concepts. To start, the notion of a young, pale, brunette woman is not copyright protectable; it is merely an idea. *See Gable*, 727 F. Supp. 2d at 846 (finding no substantial similarity in two characters where both were "African-American and perhaps the same age"). That both characters wear wardrobe typical of the era is also unprotectable; women of the late 1800s wearing corsetry, high-collared shirts, and extravagant gowns flow directly from the Victorian setting. *See Cavalier*, 297 F.3d at 825 ("[A] moon character can be considered

Katten
KattenMuchinRosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.7645 tel   213.788.7761 fax

17

a stock character for children's literature, and directly flows from the idea of a journey in the night sky."). Similarly, a woman being rebellious, seductive, and steeped in the occult are all stock elements that naturally flow from the setting of a supernatural and crime-laden Victorian-era London. Thus, all of these unprotectable elements must be filtered out in the substantial similarity analysis.

Plaintiff alleges that both Charlotte and Vanessa are "powerful [women] with a seductive, alluring presence… schooled in the social graces of the time, yet rebels against them." (Compl. ¶53.) This general statement ignores the significant differences in personalities between the two characters. *See Gable*, 727 F. Supp. 2d at 841–42 ("Although there are some general similarities between the works, the similarities pale in comparison to the significant differences between the works."). The two characters have vastly different upbringings. Plaintiff's Charlotte is a French-born orphan raised by her "middle class" grandmother in both England and the U.S. (Bruckner Decl. ¶6, Ex. D.) Vanessa is born into wealth and raised by both parents. (*Id.* ¶7, Ex. J.)

Further, while both are seductive, Charlotte is perverse: she is drawn to boys and girls on the precipice of sexual maturity and annihilating their innocence, only for her to discard them once that innocence is lost. (*Id.* ¶4, Ex. A.) Charlotte is also homicidal and has no remorse for those she kills. (*Id.*) Finally, Charlotte is described as treating her admirers like slaves, exploiting their attraction to her for her own gain. (*Id.*)

Vanessa has *none* of these attributes. Though Vanessa has a sensuality that she explores with adult men, that sensuality is never depicted as a perversion. (*Id.* ¶7, Ex. J.) She has no inappropriate friendships with young boys or girls and never shows interest in innocence of children generally. (*Id.*) Vanessa is not homicidal: in the first season, she notably does not kill anyone – she is traumatized, not a psychopath. Finally, Vanessa is not cruel to her admirers. She has a genuine love affair with Dorian Grey in the first season, in which *he* harms *her* through his callousness. (*Id.*)

Finally, Charlotte is described as a "green witch" with no inherent powers; instead, her abilities come from knowledge of plants. (*Id.* ¶6, Ex. D.) Vanessa, on the other hand,

Katten
KattenMuchinRosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.4445 tel   213.788.7360 fax

18

is bestowed with clairvoyance and an ability to channel the dead. (*Id.* ¶7, Ex. J.) Charlotte is fundamentally driven by the unequal treatment of women in Victorian society and attends multiple feminist revolts; though Vanessa is demonstrably rebellious, she is not shown attending any feminist activities. (*Id.* ¶¶ 6-7, Exs. D, J.) Vanessa, unlike Charlotte, is also never shown wearing men's clothing. (*Generally id.* ¶7, Exs. J.)

ii.   <u>Vanessa Ives and Frederick Fitzclarence</u>

Plaintiff also alleges that *Penny Dreadful's* Vanessa is substantially similar to her character Frederick. (Compl. ¶57.) Plaintiff again slices-and-dices to attempt to establish substantial similarity. (*See id.*) But even the similarities Plaintiff claims exist between these two characters are misstated, overgeneralized, or unprotectable.

Plaintiff alleges that Frederick and Vanessa are similar because both had seizures, were institutionalized, and struggle with a sense of self after traumatic childhood experiences. (Bruckner Decl. ¶¶4, 7, Exs. B, J.) Frederick suffers from epilepsy and is erroneously deemed to be demonically possessed by a priest in his early teenage years. (*Id.* ¶ 4, Ex. B.) Vanessa specifically does *not* have epilepsy (noted in Episode 5), but suffers from fits due to depression. (*Id.* ¶7, Ex. J.) Frederick is sent to a seminary school to live with other priests to exorcise him of his demons, but is rescued by his uncle, who disbelieves that Frederick is possessed. (*Id.* ¶4, Ex. B.) Vanessa, after months of being bedridden, is committed to an asylum, as doctors resolve that her disease is of the mind and not the body. (*Id.* ¶7, Ex. J.) In the asylum, she discovers the reality of her supernatural abilities and is besotted by Lucifer himself. (*Id.*) To put it simply: Frederick has serious physical illness in the form of epilepsy and is abandoned by his family because of a priest's misdiagnosis of demonic possession; Vanessa has a form of serious depression which ails her so substantially that her family has no other choice than to hand over her care to an asylum, where she finds she has actual powers – and while there, she still keeps in constant contact with her family.

Additionally, the way Vanessa and Frederick's childhood traumas manifest are completely different. Frederick is hysterical, constantly changing identity, so desperate

19

for attention he will do anything, including harm himself.  (*Id*. ¶4, Ex. B.)  Vanessa is self-inquiring and she is constantly seeking answers for her own suffering.  (*Id*. ¶7, Ex. J.)

Analyzing these surface similarities ignores the massive differences between Vanessa and Frederick.  Vanessa is a woman in her late 20s with clairvoyance and the ability to communicate with the dead.  (*Id*.)  She is quiet, sly, reflective, introspective, and mysterious.  (*Id*.)  She studies under the tutelage of a wise witch and then uses those skills to assist in finding a childhood friend.  Frederick is a man in his early 20s of aristocratic birth and part of a large family.  (*Id*. ¶4, Ex. J.)  He has epilepsy and is over-the-top, desperate for attention, and unsure of himself and of what he is capable.  (*Id*.)  The similarities "pale in comparison to the significant differences" between the two characters, and Plaintiff cannot establish any infringement.  *Gable*, 727 F. Supp. 2d at 841–42.

### iii.    Vanessa Ives and Landon Lloyd

Plaintiff alleges a single similarity between Vanessa and a *third* character, Landon: they both have powers of clairvoyance.  (Compl. ¶57.)  This is not a protectable similarity, particularly in the context of a Victorian Gothic setting.  Furthermore, though they share this one attribute in common, literally everything else about the two characters is different: gender, age, social status, profession, fundamental motivations, personality–all attributes that are nearly diametrically opposed between the two characters.  (*See generally* Bruckner Decl. ¶¶4, 7, Exs. C, J.)  There is no substantial similarity between Landon and Vanessa.

### iv.    Sir Malcolm Murray and Landon Lloyd

Plaintiff alleges that Sir Malcolm and Landon also are substantially similar because both are "explorer[s] of the globe whose travels included Africa" and are searching for a missing relative.  (Compl. ¶14.)  This is a high level, unprotectable concept that flows directly from the time-period and genre.  Additionally, Plaintiff describes Landon as visiting South America, not Africa.  (Bruckner Decl. ¶6, Ex. F.)

20

Katten
KattenMuchinRosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.7445 tel   213.788.7360 fax

Landon is American, compelled to travel to find other clairvoyants like himself.  (*Id.*) Sir Malcolm exclusively visits uncharted areas of Africa, staying for long periods to effectuate anthropological, plant, and animal studies.  (*Id.* ¶7, Ex. J.)

Sir Malcolm, unlike Landon, is not "nomadic;" he always maintains a home to which he returns after travel.  (*Id.*)  Landon abandons his "nomadic" life to seek employment as an investigator and search for his half-sister.  (*Id.* ¶6, Ex. F.)  Conversely, Sir Malcolm *temporarily* halts his travels to Africa to search for his daughter Mina.

There are innumerable dissimilarities between these two characters: Sir Malcolm has a wife and children and is about 60 when *Penny Dreadful* begins.  Landon is in his late 20s, has no wife or children, and is described as being utterly hopeless women.  (*See id.*)  Sir Malcolm, by contrast, is undeniably debonair, and infidelity is a fundamental component of his narrative on *Penny Dreadful*.  (*Id.* ¶7, Ex. J.)  Landon is guileless, upbeat, and optimistic.  (*Id.* ¶4, Ex. C.)  Sir Malcolm is brooding, heartbroken, and hardened.  The differences in age, personality, convictions, romantic relationships, and travel destinations demonstrate that these two characters are far more different than they are alike, and thus there is no substantial similarity between them.

## V.    PLAINTIFF'S CLAIMS FOR DECLARATORY RELIEF AND AN ACCOUNTING ALSO FAIL.

Plaintiff's claims for declaratory relief and for an accounting are dependent upon the same allegations of copyright infringement.  Accordingly, if the copyright infringement claims fail to state viable claims for relief, the claims for declaratory relief and for an accounting fail for the same reasons.  *See Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d, 1056, 1073 (C.D. Cal 2017) (absent a viable underlying claim for copyright infringement, plaintiff was not entitled to declaratory relief).

## VI.   LEAVE TO AMEND SHOULD BE DENIED.

No amendment would overcome the lack of substantial similarity between the characters as determined by the characters themselves.  Therefore, if the Court finds that Plaintiff's characters and those in *Penny Dreadful* are not substantially similar in

21

protected expression, it should dismiss these claims with prejudice.  *Schkeiban v. Cameron*, No. 12-0636, 2012 WL 5636281, at *1 (C.D. Cal. Oct. 4, 2012) *aff'd* 566 F. App'x 616 (9th Cir. 2014) (dismissing complaint with prejudice because a lack of substantial similarity between works "is a defect that cannot cured by an amended complaint"); *Gilbert v. New Line Prods., Inc.*, No. 09-02231, 2009 WL 7422458, at *6 (C.D. Cal. Nov. 16, 2009), *aff'd*, 490 F. App'x 34 (9th Cir. 2012) (dismissing plaintiff's claim with prejudice based on a lack of substantial similarity because "no additional facts would allow [plaintiff] to prevail in her case").

## VII.   CONCLUSION

For all of the reasons set forth above, Defendants respectfully request that the Court dismiss the Complaint with prejudice as to Defendants, and award Defendants their attorneys' fees and costs as the prevailing party.

Dated:  August 4, 2023                    KATTEN MUCHIN ROSENMAN LLP


                                          By: /s/ *David Halberstadter*
                                              David Halberstadter
                                          Attorneys for Defendants

158426313

# CERTIFICATE OF
# COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,983 words, which complies with the word limit of L.R. 11-6.1.

Dated:  August 4, 2023                **KATTEN MUCHIN ROSENMAN, LLP**

By: /s/ *David Halberstadter*
David Halberstadter
Attorneys for Defendants

158426313